IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:07-CV-249-FL

| | |
|---|---|
| ROBERT HORNE and <br> MARY CATHERINE HORNE, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL EXPRESS CORPORATION <br> and FEDERAL EXPRESS <br> CORPORATION RETIREE GROUP <br> HEALTH PLAN, <br><br> Defendants. | **MEMORANDUM AND** <br> **RECOMMENDATION** |

This case comes before the court on the motion for summary judgment by plaintiffs Robert Horne ("Mr. Horne") and Mary Catherine Horne ("Mrs. Horne") (collectively "plaintiffs") (DE #17) and the motion for summary judgment filed by defendants Federal Express Corporation ("the Company") and Federal Express Corporation Retiree Group Health Plan ("the Plan") (collectively "defendants") (DE #22) pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motions were referred to the undersigned Magistrate Judge for review and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it will be recommended that defendants' motion be allowed, plaintiffs' motion be denied, and judgment be entered dismissing this case with prejudice.

## BACKGROUND

Mr. Horne began employment with the Company on 12 October 1987 as a temporary employee. (Am. Compl. ¶ 13; Answer ¶ 13; AR 00014 ).[1] On 1 February 1988, he became a permanent employee. (AR 00014). He remained a permanent employee until he voluntarily resigned from the Company about 18 years later on 10 November 2005, at the age of 56. (Am. Compl. ¶¶ 20, 24; Answer ¶ 20, 24; AR 00014).

The Plan as it existed when Mr. Horne retired provided health retirement benefits to eligible employees and their qualified dependents,[2] and was both administered and funded by the Company. (*See* AR 00232, AR 00190, AR 00192, AR 00201). Under the Plan, for a permanent employee to be eligible for retirement health benefits he had to be at least 55 years old when he retired, which Mr. Horne was, and had to have been employed for a specified continuous term of years. (*See* AR 00095). The required term was 10 years if the employee was employed before 1 January 1988 and 20 years if the employee was employed on or after 1 January 1988. (*Id.*).

On 14 February 2006, the Plan administrator[3] denied Mr. Horne's claim for retirement health benefits. The Plan administrator found that Mr. Horne was subject to the 20-year service requirement because his employment as a permanent employee began after 1 January 1988, on 1 February 1988. (AR 00020-21). The period of Mr. Horne's continuous service between 1 February

---

[1] The citations to "AR___" are to the Bates-stamped pages of the copy of the certified administrative record submitted with defendants' motion for summary judgment.

[2] Assuming Mr. Horne's eligibility, Mrs. Horne, Mr. Horne's wife at all times relevant to this action, would fall within the definition of "Qualified Dependent" and "Covered Participant" as those terms are defined by the Plan. (*See* AR 00193, AR 00203).

[3] The Plan defines "administrator" as "the Company . . . acting through its Employee Benefits Department, except that with respect to the benefits described in Article 4 ["Dental Benefits"], Metropolitan Life Insurance Company . . . shall be the Administrator." (AR 00190).

2

1998 and his retirement date, about 18 years, failed to meet the 20-year service requirement. (*See id.*).

Mr. Horne's original hire date was, as indicated, in October 1987, before 1 January 1988. Therefore, if that earlier date had been used to determine Mr. Horne's eligibility, the 10-year service requirement would have applied and Mr. Horne arguably would have fulfilled it, having served about 18 years from his original hire date. However, the initial October 1987 hire date was for employment as a temporary employee. The Plan administrator took the position that the 10-year service requirement applied only if the employee began permanent employment before 1 January 1988. (AR 00020-21). The Plan administrator explained its decision in relevant part as follows:

> Mr. Horne's status as a permanent employee commenced on February 1, 1988. The age and service requirements dictate that if an employee's **permanent** hire date is on or after January 1, 1988, the employee is eligible for Retiree Health Coverage if the employee retires, terminates, or is downgrade [*sic*] to a non-permanent employment status (including restricted schedule) at age 55 or older and has at least 20 years of permanent part-time or permanent full-time continuous service after age 35.
>
> Because Mr. Horne's **permanent** hire date was February 1, 1988 more than a month beyond the cut-off date of December 31, 1987, he would be required to have had 20 years of permanent continuous service in order to be eligible for Retiree Health benefits. If Mr. Horne had not been terminated from the Company and had remained in permanent employee continuous service status, he would have been eligible for Retiree Health coverage on February 1, 2008.

(AR 00020) (emphasis added).

Mr. Horne appealed from the denial determination. On 26 July 2006, the Plan administrator again denied his claim and on essentially the same grounds. (AR 00001-3).

On 3 July 2007, plaintiffs filed the instant action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* Plaintiffs' original Complaint (DE #1) asserted two claims, but plaintiffs amended their complaint with leave of court to eliminate one of them. (*See*

3

DE #37). The remaining claim seeks to recover benefits, enforce rights, and clarify rights to future benefits under 29 U.S.C. § 1132(a)(1)(B). The parties' respective motions seek summary judgment on this remaining claim.[4]

Plaintiffs contend that the 10-year service requirement in the Plan applies to an employee if his employment began prior to 1 January 1988, whether the initial employment was temporary or permanent; Mr. Horne satisfied this requirement; and the denial of benefits to him should be reversed. Defendants maintain that the 10-year service requirement applies only if the pre-1 January 1988 employment was permanent; Mr. Horne was therefore not subject to the 10-year requirement, but rather the 20-year service requirement; and the denial of benefits to him should be upheld.

## DISCUSSION

I.  **Standard of Review**

   A.  **Summary Judgment Standard**

It is well established that a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In analyzing whether there is a genuine issue of material fact, all facts and inferences drawn from the facts must

---

[4] Plaintiffs' motion is styled as one seeking partial summary judgment on one of the two claims presented in the original Complaint because the motion was filed prior to amendment of the Complaint. The court is treating plaintiffs' motion as seeking summary judgment on the sole claim asserted in the Amended Complaint (DE #38).

4

be viewed in the light most favorable to the nonmoving party. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996).

The burden is on the moving party to establish the absence of genuine issues of material fact and "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323; *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."). If the movant meets its burden, then the non-moving party must provide the court with specific facts demonstrating a genuine issue for trial in order to survive summary judgment. *Celotex*, 477 U.S. at 323. The non-moving party is not permitted to rest on conclusory allegations or denials, and a "mere scintilla of evidence" will not be considered sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Standard for Reviewing Denial of Benefits Under ERISA

As the Fourth Circuit Court of Appeals recently reiterated, "[i]t is well-settled that courts review the denial of benefits under an ERISA policy for 'abuse of discretion' if the policy grants the administrator or fiduciary final and conclusive discretionary authority." *Guthrie v. National Rural Elec. Coop. Ass'n Long-Term Disability Plan*, 509 F.3d 644, 649 (4th Cir. 2007). Under this standard, "an administrator's decision will be upheld if it is reasonable." *Id.* at 650 (citing *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 787 (4th Cir. 1995)). A court's review of a plan administrator's decision under the abuse of discretion standard must be based on facts known to the administrator

at time of decision.[5] *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994).

Here, the parties do not dispute that the Plan Document grants the Plan administrator the discretion to determine benefit eligibility and to construe the terms of the Plan Document. The Plan Document provides, in pertinent part:

> Notwithstanding the foregoing or any other provisions of this Plan to the contrary, the Administrator shall maintain the authority to interpret the provisions of the Plan
> . . . .
>
> The Administrator shall have, in addition to the general administrative power described herein, such other powers as may be necessary to perform its duties hereunder, including, without limiting the generality of the foregoing, the power to determine all questions relating to the interpretation and construction thereof . . . .

(AR 00271). Accordingly, the court is required to apply an abuse of discretion standard in reviewing the Plan administrator's decision in this case.

However, the parties do not agree on whether a heightened abuse of discretion standard should be applied in this case to account for a possible conflict of interest. As recently explained by the Fourth Circuit, "when the plan administrator's own business interests will be affected directly by its decision on the claim for benefits, a conflict of interest arises that 'may operate to reduce the deference given to a discretionary decision of that fiduciary . . . to the extent necessary to neutralize any untoward influence resulting from that conflict.'" *Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634, 639 (4th Cir. 2007) (quoting *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 343 n.2 (4th Cir. 2000) (internal quotation marks omitted)). In the past, the Fourth Circuit has not found a

---

[5] In support of their motion for summary judgment, plaintiffs have submitted an affidavit of Mr. Horne dated 1 February 2008 (DE #17-2). The affidavit was created after the 26 July 2006 final benefits decision and was not part of the record before the Plan administrator during its review. Consequently, because the court will be applying an abuse of discretion standard as discussed below, this affidavit will not be considered by the court.

6

per se conflict where, as in this case, the employer is the administrator of a self-funded plan. *See Colucci v. Agfa Corp. Severance Pay Plan*, 431 F.3d 170, 176 (4th Cir. 2005). In *Colucci*, the Court held that "the simple and commonplace fact that a plan's administrator is also its funder is not enough to support a finding of a conflict of interest that would cause an adjustment to our deference." *Id.* at 179.

However, this holding appears to have been overruled by the recent U.S. Supreme Court decision in *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008). The Court held that a conflict does arise under such circumstances which does affect the deference due the administrator's decision. *Id.* at 2346. The Court stated:

> Often the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket. We here decide that this dual role creates a conflict of interest; that a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case.

*Id.* Thus, because the Company both funds the Plan and makes benefits determinations, there is a conflict of interest that this court must consider as a factor in determining whether the Plan has abused its discretion in denying Mr. Horne benefits.

The court is also mindful of the law that governs a plan's discretion with respect to interpretation of the plan's terms. Although the Plan in this case confers discretion on the Plan administrator to construe the meaning of the Plan's terms, a plan administrator is "not free to alter the terms of the plan or to construe unambiguous terms other than as written." *Colucci*, 431 F.3d at 176. If a denial of benefits is contrary to the unambiguous terms of the plan, the administrator's determination "will constitute an abuse of discretion." *Lockhart v. United Mine Workers of Am.*

7

*1974 Pension Trust*, 5 F.3d 74, 78 (4th Cir. 1993). However, if the terms are ambiguous, the court will defer to the administrator's decision under the abuse of discretion standard:

> [W]hen the plan's terms are ambiguous in the sense that its language gives rise to at least two different but reasonable interpretations and when the plan confers discretion on the administrator to interpret the plan and resolve ambiguities, a court defers to the administrator's interpretation by reviewing it only for abuse of discretion.

*Colucci*, 431 F.3d at 176 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)).

## II.   Mr. Horne's Eligibility for Benefits

The central legal issue presented in this case is whether under the Plan an employee must be employed as a permanent, rather than a temporary, employee before 1 January 1988 to be subject to the 10-year service requirement, rather than the 20-year service requirement. The court finds that the Plan Document unambiguously requires permanent employment status before 1 January 1988.

The key portion of the Plan Document evincing this requirement is Section 2.1(a). It states expressly that an employee is subject to, and can satisfy, the 10-year service requirement only "if such Covered Employee's 10 consecutive Years of Permanent Continuous Service as an Employee began prior to January 1, 1988." (AR 00210). This language obviously requires that an employee be a permanent employee before 1 January 1988. The portion of Section 2.1(a) in which this phrase appears reads as follows:

> Section 2.1. <u>Coverage After Retirement</u>.
>
> (a) A Retired Covered Employee under the Plan shall mean (i) any former Covered Employee who has performed at least 10 consecutive Years of Permanent Continuous Service as an Employee of the Participating Employer (based on the former Covered Employee's last permanent hire date shown in the Participating Employer's personnel record) after such Employee has attained age 45 and has remained employed with the Participating Employer through his attainment of age 55, **if such Covered Employee's 10 consecutive Years of Permanent Continuous Service as an Employee began prior to January 1, 1988**; . . .

(AR 00210) (emphasis added).

Plaintiffs argue that Section 2.1(a) does not require that an employee have been a permanent employee before 1 January 1998 because of the definition of the term "Year of Permanent Continuous Service," the plural form of which is used in Section 2.1(a). The term is defined as "a fiscal year during which a Covered Employee has worked the normally required number of hours and days expected of an Employee in his job classification, with any Participating Employer, and shall include periods during which such Covered Employee is on an approved leave of absence." (AR 00206). Plaintiffs point out that this definition does not state that the employee's service be as a permanent employee. Thus, plaintiffs contend, the only service that must be completed is service that included working "the normally required number of hours and days expected of an Employee in his job classification," irrespective of the permanent or temporary status of the employee.

The court does not believe this interpretation is a reasonable one. The notion that "Year of Permanent Continuous Service" does not relate to years of permanent service is undermined most apparently by inclusion of the word "Permanent" in the term itself. In addition, the manifest focus of the definition is explaining the "continuous" nature of the service required, as shown by its references to days and hours "expected" and an exception for any approved leave. In other words, the definition is directed at defining the circumstance under which a gap in employment might occur (*i.e.*, when the employee fails to work the expected schedule without an excused absence) which would disqualify a period of service from being used in an eligibility calculation. As indicated by inclusion of the word "Permanent" in the term, permanent employment appears to be assumed.

Moreover, Section 2.1(a) states expressly that "Years of Permanent Continuous Service" is "based on the former Covered Employee's last **permanent hire date**." (AR 00210) (emphasis

9

added). This reference strongly supports the notion that "Year of Permanent Continuous Service" contemplates only service performed in a permanent employment status. Even if the term "Year of Permanent Continuous Service" were deemed to accommodate temporary service, the provision in Section 2.1(a) previously discussed requires permanent employment status before 1 January 1998.

The summary plan description for the Plan ("SPD")[6] could conceivably be interpreted to lend support to plaintiffs' position. The relevant section of the SPD reads:

> If you are a permanent full-time or permanent part-time employee of [the Company] . . . , you will be eligible for Retiree Health Coverage under the . . . Plan if you retire or terminate your employment with [the Company] . . . after satisfying one of the following conditions:
>
> (1) You were employed by [the Company] . . . before January 1, 1988, and you have completed at least 10 years of continuous permanent fulltime [*sic*] or permanent part-time employment from your most recent hire date with [the Company] . . . after you attain age 45 . . . .

(AR 00095).

This language does not expressly require that an employee have been a permanent employee before 1 January 1988. (AR 00095). In addition, it identifies the required 10-year service period as running from "your most recent hire date," which is listed in the personnel record of Mr. Horne as his original hire date of 12 October 1987, not his hire date as a permanent employee on 1 February 1988. (*Id.*; AR 00014).

However, the court also believes that the quoted section of the SPD could reasonably be interpreted as implying permanent status as of 1 January 1988 and the most recent hire date as relating to permanent employment, given the apparent emphasis throughout on permanent

---

[6] The SPD at issue is contained in the *2005 Your Employee Benefits* book, abbreviated "YEB." For clarity, the court is using the generic term SPD.

employment and the absence of any explicit reference to temporary employment. The Plan administrator adopted such an interpretation of this language in denying Mr. Horne benefits. (*See* AR 00020-21; AR 00001-3).

Perhaps more significantly, the Plan Document makes clear, and the parties agree, that the Plan Document overrides the SPD. (*See* Pls.' Mem. in Supp. of Mot. for Summ. J., pp. 13-14 (DE #17); Defs.' Cross-Mot. for Summ. J, p. 8 (DE #20)). The relevant section of the Plan Document reads:

> Each benefit in this book is based on a formal plan document or contract. If there is a conflict between this book and the official plan documents, the plan documents always govern. You are not entitled to benefits because of a misstatement in or omission from this book.

(AR 00070). Therefore, even if the SPD were interpreted to support plaintiff's position, it would be overridden by the Plan Document.

As indicated, the Plan administrator denied Mr. Horne health retirement benefits on the grounds that the 10-year service requirement did not apply to him because he was not hired as a permanent employee before 1 January 1988, the alternative 20-year service requirement did apply, and Mr. Horne did not meet that requirement, having served only about 18 years. (AR 00001-3, AR 00020-21). As the Plan administrator stated in the decision denying Mr. Horne's appeal:

> The Committee determined that the [SPD] and Plan are specific that an employee is eligible for retiree health coverage if his most recent hire date with FedEx as a permanent employee is before January 1, 1988 and he retires at age 55 or older with at least 10 years of continuous service; or, if his most recent hire date with FedEx as a permanent employee is on or after January 1, 1988, and he retires at age 55 or older with at least 20 years of continuous service. The Committee found that Mr. Horne was not eligible for retiree health coverage because he became a permanent employee with FedEx on 02/01/88 and only had 18 years of continuous service at the time of his retirement on 10/31/2005.

(AR 00003).

The Plan administrator's decision is therefore in accordance with what the court has found to be the unambiguous meaning of the Plan Document that the 10-year service requirement applies only to employees with permanent employment status before 1 January 1988. Even if the Plan Document were deemed to be ambiguous on this issue, the court finds that the Plan administrator's interpretation would be reasonable. For these reasons, the court concludes that the Plan administrator did not abuse its discretion in denying Mr. Horne's claim for retirement health benefits. The court also finds that there is no genuine issue as to any material fact and that defendants are therefore entitled to judgment as a matter of law, pursuant to Fed. R. Civ. P. 56(c).

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that defendants' motion for summary judgment be ALLOWED, plaintiffs' motion for summary judgment be DENIED, and judgment be entered DISMISSING this case with prejudice.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten business days, or such other period as the court specifies, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This the 11th day of August, 2008.

James E. Gates
United States Magistrate Judge

12

Case 5:07-cv-00249-FL   Document 39   Filed 08/11/08   Page 12 of 12