IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:07-CV-249-FL

| | |
|---|---|
| ROBERT HORNE and MARY CATHERINE HORNE, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>FEDERAL EXPRESS CORPORATION, a Delaware Corporation, and the FEDERAL EXPRESS CORPORATION RETIREE GROUP HEALTH PLAN, an ERISA Plan, )<br>)<br>Defendants. ) | ORDER |

This case comes before the court on plaintiffs' motion for partial summary judgment (DE # 17) and defendants' motion for summary judgment (DE # 22), with benefit of memorandum and recommendation ("M&R") of the magistrate judge (DE # 39), recommending that the court deny the former and allow the latter motion. Plaintiffs timely filed objections to the M&R (DE # 41), to which defendants have responded (DE # 47).[1] In this posture, the issues raised are ripe for ruling.

**STATEMENT OF THE CASE**

On July 3, 2007, plaintiffs filed complaint stating a claim for benefits under the Employment Retirement Income Security Act of 1974 ("ERISA"), or in the alternative, a breach of fiduciary

---

[1] On September 12, 2008, plaintiffs moved to strike declaration and exhibits filed by defendants with their response. As the court need not consider these documents in reaching its decision, it does not rule on their admissibility. The court notes, however, that much of the litigation stemming from this dispute may have been avoided had a more comprehensive administrative record been compiled at the outset of the review process.

obligation claim under ERISA. Plaintiffs thereafter moved for partial summary judgment on the ERISA claim for benefits. In addition to responding in opposition to that motion, defendants moved for summary judgment as well. The dispute centers on the reasonableness of the administrator's interpretation of provisions in the company plan document ("Plan") and summary plan description ("SPD").

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 72.3(c), EDNC, the motions for summary judgment were referred to Magistrate Judge James E. Gates for M&R. While these cross-motions were pending, the parties filed a joint motion to amend plaintiffs' complaint to remove plaintiffs' alternative claim for relief based on allegations of breach of fiduciary duty. This was allowed.

## UNDISPUTED FACTS

Those portions of the factual recitation set forth in the M&R not objected to are relied upon by the court and incorporated herein by reference. Addressing more particularly disputed matters bearing on the record of the case, the court recognizes and adopts plaintiffs' assertion that neither the complaint nor the administrative record ("AR") indicates Horne was hired as a "temporary" employee on October 12, 1987. Similarly, the court sustains plaintiffs' objection that the document marked AR 00014 does not specify a date upon which Horne became a permanent employee.

The court notes the AR contains a computer printout of the company internal records denominated "Significant Dates Screen," bearing generation date July 13, 2006, which includes among others the following entries: Original Date of Hire: 10/12/1987; Most Recent Hire Date: 10/12/1987; Permanent Date: 02/01/1988; and Permanent Full Time: 02/22/1988. (AR 00006).Plaintiffs argue that the Significant Dates Screen "cannot provide a basis for the Plan's

2

determination of the Horne's [sic] entitlement for benefits," because this document does not include necessary information such as Horne's date of birth. (Pls' Obj. to M&R, p. 3 n.2). Plaintiffs appear to contend that because the screen does not contain all of the information that goes into the making of the benefits determination, it cannot be relied on. There is no factual support for this, however, and plaintiffs' bald assertion, without more, does not preclude the court from considering the screen information, along with the rest of the AR, in determining whether the administrator's decision was reasonable. The language of the documentation made a part of this record will be parsed more particularly in the court's discussion below.

## DISCUSSION

The district court conducts a *de novo* review of those portions of a magistrate judge's M&R to which specific objections are filed. See 28 U.S.C. § 636(b); Local Civil Rule 72.4(b), EDNC. Those portions of the M&R to which only general or conclusory objections are lodged may be affirmed by the district court unless clearly erroneous or contrary to law. See Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Summary judgment will be granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In analyzing whether there is a genuine issue of material fact, all facts and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir. 1996).

3

In ERISA cases where the plan grants the administrator discretionary authority, as both parties agree it does here, "it is well-settled that courts review the denial of benefits under [the] policy for 'abuse of discretion.'" Guthrie v. National Rural Elec. Coop. Ass'n Long-Term Disability Plan, 509 F.3d 644, 649 (4th Cir. 2007). Under the "abuse of discretion" standard, "an administrator's decision will be upheld if it is reasonable." Id. at 650. The review must be based on those facts known to the administrator at the time of decision. Sheppard & Enoch Pratt Hosp. Inc. v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994). While the Fourth Circuit has not traditionally held that a conflict of interest exists when the employer is the administrator of a self-funded plan, in light of the recent U.S. Supreme Court decision in Metro. Life Ins. Co. v. Glenn, this court finds the administrator faced a conflict of interest, and will consider that as a factor in reviewing for abuse of discretion. 128 S. Ct. 2343 (2008).

Plaintiffs object to the magistrate judge's characterization of the central legal issue, which he framed as "whether under the Plan an employee must be employed as a permanent, rather than a temporary, employee before 1 January 1988 to be subject to the 10-year service requirement, rather than the 20-year service requirement." (M&R p. 8). As stated above, the court has sustained plaintiffs' objection that the AR does not contain the classification "temporary" employee. Here, however, the court finds the magistrate properly framed the legal issue, as the clause referring to "temporary" employee serves only to clarify, and not modify, the relevant question: "whether under the Plan an employee must be employed as permanent before January 1, 1988, to be subject to the 10-year service requirement." It is not necessary to determine whether the employee was ever technically classified as "temporary" to answer this question.

Plaintiffs argue that the magistrate judge was incorrect in reading Section 2.1(a) of the Plan

4

to require one to have been employed in a permanent capacity before January 1, 1988, in order to be eligible for benefits after only "10 consecutive Years of Permanent Continuous Service." The relevant text states:

> A Retired Covered Employee under the Plan shall mean (I) any former Covered Employee who has performed at least 10 consecutive Years of Permanent Continuous Service as an Employee of the Participating Employer (based on the former Covered Employee's last permanent hire date shown in the Participating Employer's personnel record) after such Employee has attained age 45 and has remained employed with the Participating Employer through his attainment of age 55, if such Covered Employee's 10 consecutive Years of Permanent Continuous Service as an Employee began prior to January 1, 1988; . . .

(AR 00210). Plaintiffs' contention that the administrator may look only to Section 1.1 of the Plan to interpret the second appearance of "Years of Permanent Continuous Service," and not to its context in the sentence, is unreasonable.

Under Section 1.1 of the Plan, a "Year of Permanent Continuous Service" is defined as "a fiscal year during which a Covered Employee has worked the normally required number of hours and days expected of an Employee in his job classification, with [FedEx}, and shall include periods during which such Covered Employee is on an approved leave of absence." (AR 00206). Plaintiffs contend that this definition contains no "permanent" classification requirement, and that "if FedEx's Plan had intended that permanent employment status was required prior to January 1, 1988, it could have easily said so." (Pls' Obj. to M&R, p. 8). The fact is Section 2.1(a) of the Plan does exactly that.

The first time the term "Years of Continuous Permanent Service" appears in 2.1(a), the text explains in a parenthetical that these years are determined "based on the former Covered Employee's last permanent hire date shown in the Participating Employer's personnel record." (AR 00210). It

5

would be unreasonable to interpret the second appearance of that term by looking only to another section of the Plan and completely disregarding the explanation given in the very same sentence. Thus, Section 2.1(a) unambiguously conveys that an employee cannot begin his "Years of Continuous Permanent Service" for the purposes of the January 1, 1988, deadline until after his "last permanent hire date." The company's internal records show that Horne did not start as a "permanent" employee until February 1, 1988. (AR 00006).

Plaintiffs raise the objection that if the SPD conflicted with the Plan to plaintiffs' benefit, then the SPD controls regardless of the Plan's reservation of authority.[2] (Pls' Obj. to M&R, p. 14). Plaintiffs are correct as a matter of law on this point, but the SPD here does not conflict with the Plan, and so it is proper to consider both.

It is established in this circuit that if there is "a conflict between the complexities of the plan's language, and the simple language of the SPD, the latter would control." Aiken v. Policy Mgmt. Sys. Corp., 13 F.3d 138, 140 (4th. Cir. 1993). The courts, however, do not apply this doctrine rashly. See Hendricks v. Central Reserve Life Ins. Co., 39 F.3d 507, 512 (4th. Cir. 1994) ("Where ... the summary plan description and the plan itself do not conflict, our cases provide no prohibition against review of the official plan itself for a fuller understanding of the plan's terms. Indeed, in those circumstances the plan is the controlling document for determining the scope of benefits provided.")

---

[2]Plaintiffs did not raise this argument until after the M&R was filed. In fact, in moving for partial summary judgment, plaintiffs stated, "Even FedEx acknowledges the supremacy of the Plan document language in controlling an employee's entitlement to benefits." Pls' Mot. for S.J. p. 13.

Page 187 of the SPD states in pertinent part:

> If you are either a permanent full-time or permanent part-time employee of a participating employer, you will be eligible for Retiree Health Coverage under the Federal Express Corporation Retiree Group Health Plan if you retire or terminate your employment with a participating employer after satisfying one of the following conditions:
>> (1) You were employed . . . before January 1, 1988, and you have completed at least 10 years of continuous permanent fulltime or permanent part-time employment from your most recent hire date with any of the Controlled Group Members after you attain age 45 . . .

(AR 00095). If the SPD contained only that text, it would be a close call indeed as to whether the SPD and the Plan conflict in this case. However, the court reads "the provisions of the SPD together in a manner that gives all provisions significance." Fuller v. FMC Corp., 4 F.3d 255, 261 (4th Cir. 1993); see also Riggs v. Metropolitan Life Ins. Co., 977 F.2d 573, 1992 WL 237295 at *2 (4th. Cir. Sept. 25, 1992) (declining to construe an SPD in the manner plaintiff suggested because it would "make the rest of the summary plan description . . . of no relevance to the Plan."). The "Age and Service Requirements" chart on page 188 of the SPD states an employee is eligible for retirement benefits "If [his] most recent hire date with FedEx as a permanent full-time or permanent part-time employee was before January 1, 1988." (AR 00096). In light of this language, it cannot be said the SPD is inconsistent with the Plan, and thus the magistrate judge was correct to look to the Plan for a fuller understanding of the terms..

Plaintiffs argue that the M&R conflicts with Fourth Circuit precedent in finding, "Even if the Plan Document were deemed to be ambiguous on this issue, the court finds that the Plan administrator's interpretation would be reasonable." (M&R p. 12; Pls' Obj. to M&R p. 20). In Carolina Care Plan, Inc v. McKenzie, the Court of Appeals held, "Where an ERISA plan vests discretion in an administrator who also insures the plan, reasonable exercise of that discretion

7

requires that the administrator construe plan ambiguities against the party who drafted the plan." 467 F.3d 383, 389 (4th. Cir. 2006). While that holding was limited to cases where the administrator insured the plan, this court recognizes that in light of the aforementioned Supreme Court decision in Metro. Life Ins. Co. v. Glenn, the rule also guides the court in situations like this one, where the company both funds the plan and makes benefits determinations.

As stated above, however, the court finds Section 2.1(a) of the Plan to be unambiguous. "When an administrator applies unambiguous plan terms to the facts of a particular claim, courts will defer to every judgment the administrator makes that is supported by substantial evidence and a reasoned decision making process." Carolina Care, 467 F.3d at 389. The company's internal records, including the Significant Dates Screen located at AR 00006, constitute substantial evidence upon which the administrator made its decision. Thus, even taking into account the administrator's conflict of interest, the court cannot say there was an abuse of discretion. The court is sympathetic to plaintiffs' situation. It comes to this decision in favor of defendants, against the interests of Mr. and Mrs. Horne, only after careful consideration of the statutory authority, applicable case law, and the competing arguments of the parties.

## CONCLUSION

Accordingly, for the reasons given, defendants' motion for summary judgment is ALLOWED, and plaintiffs' motion for summary judgment is DENIED. The clerk of court is directed to close the case.

SO ORDERED, this the 30 day of September, 2008.

LOUISE W. FLANAGAN
Chief United States District Judge